IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| MICHELLE TURNER,<br><br>　　Plaintiff,<br><br>　　v.<br><br>RONALD FREEMAN, *et al.*,<br><br>　　Defendants. | Civil Action No.<br><br>2:18-CV-187-RWS |

## ORDER

This case comes before the Court on Defendant Officer Sean Wareham's Motion for Summary Judgment [Dkt. 68]. Having carefully reviewed the record, the Court enters the following Order.

## BACKGROUND

This § 1983 civil rights case stems from the arrest and overnight detention of Plaintiff Michelle Turner. After she was arrested, Ms. Turner was placed on suicide watch in a padded cell with only a medical gown to cover her and a mat on which to lie down. She contends that, because the provided gowns were so flimsy and subject to tearing and opening, she was repeatedly forced into exposing her

naked body. As a result, in her sole remaining claim,[1] she charges Defendant Officer Sean Wareham with violating her constitutional right to bodily privacy.

Officer Wareham disputes that he compelled Ms. Turner to expose herself. He contends that Ms. Turner herself tore the gowns, and that, each time she asked, he provided a replacement gown for her. He argues that his conduct was appropriate and justified under the suicide risk policy and does not amount to compelling the exposure of Ms. Turner's naked body. Indeed, he claims that he never saw her naked at all. Accordingly, he has moved for summary judgment.

## DISCUSSION

The Court begins by outlining the applicable legal standards before turning to the specifics of this Motion.

## I. Summary Judgment Standard

The standard for summary judgment is well-established. Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under

---

[1] At the Motion to Dismiss stage, the Court held that Ms. Turner's other claims—including a claim that she was unlawfully placed on suicide watch in the first place—could not proceed, but the Defendant Officers had not sought to dismiss the bodily privacy claim. [Dkt. 20]. Later, but before this Motion was filed, Ms. Turner voluntarily dismissed the claims against the other jail officers. [Dkt. 66].

the governing law." BBX Capital v. Fed. Deposit Ins. Corp, 956 F.3d 1304, 1314 (11th Cir. 2020) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

At summary judgment, the court's function is not "to weigh the evidence and determine the truth of the matter," but rather "to determine whether there is a genuine issue for trial." Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019) (citing Anderson, 477 U.S. at 249). Accordingly, the Court must "consider the record and draw all reasonable inferences in the light most favorable to the non-moving party." Blue v. Lopez, 901 F.3d 1352, 1357 (11th Cir. 2018).

**II. Constitutional Right to Privacy**

Ms. Turner's claim arises under 42 U.S.C. § 1983, which allows her to sue a government official for a violation of her constitutional rights. Here, she claims that Officer Wareham violated her constitutional right to bodily privacy.

In his Motion, Officer Wareham disagrees; he also invokes the defense of qualified immunity, which protects government officials if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Hope v. Pelzer, 536 U.S. 730, 739 (2002); Gates v. Khokhar, 884 F.3d 1290, 1296 (11th Cir. 2018). When a defendant asserts

qualified immunity, the plaintiff must show both that (1) her constitutional right was violated and (2) the right was clearly established. The Court can address these issues in either order. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Officer Wareham does not dispute that the Eleventh Circuit has clearly established a constitutional right to bodily privacy for prisoners that protects them from the compelled exposure of their private parts. Boxer X v. Harris, 437 F.3d 1107, 1110–11 (11th Cir. 2006) (citing Fortner v. Thomas, 983 F.2d 1024 (11th Cir.1993)). In both Boxer X and Fortner, the court recognized that guards who compelled inmates of the other sex to expose their genitals violated the right. Id. The court explained that there is a "special sense of privacy in [a person's] genitals" such that "involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating." Id.

Indeed, those cases established a broad principle of clearly established law that applies here. See Mitchell v. Stewart, 608 F. App'x 730, 734–35 (11th Cir. 2015). In Mitchell, the female plaintiff claimed she was arrested, transported, and held in pretrial detention wearing only a sweater which exposed her breasts and did not cover her genitals. Id. at 732. The defendants argued that their case was different from Boxer X and Fortner because (1) the plaintiff was a woman and the guards were men, and (2) the plaintiff was a pretrial detainee instead of a prisoner

Id. at 735. But the court dispelled those arguments: the Fortner right was not tied to specific circumstances; rather, it was a "broad, clearly established principle" that did not require a "materially similar case." Id. at 734–35. Although Mitchell, an unpublished opinion, does not itself clearly establish the law,[2] given its similarities to the facts here, the Court finds its explanation of scope of the Fortner right extremely persuasive. As such, the Court finds that the right to bodily privacy was clearly established; the only question is whether it was violated here.

## III. Whether the Right Was Violated

At the outset, it is important to note that the Court is sensitive to Ms. Turner's harrowing experience. Undoubtedly, her time in the cell was difficult, embarrassing, and uncomfortable—and that was after the anxiety of being arrested, being shuffled off to jail, passing out, and being placed in the padded cell. Once there, she was provided only a mat and the gown itself. Because of the supposed potential for self-harm, the gown did not include the usual tie to secure it, so it was necessarily open either at the back or the front, depending on how it was worn. Moreover, though the parties disagree about who said what, it seems clear that some harsh words were exchanged between her and Officer Wareham.

---

[2] See J W by & through Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1260 n.1 (11th Cir. 2018).

Under the circumstances, Ms. Turner cannot be blamed for feeling aggrieved when the paper gowns she was provided repeatedly tore. And while Officer Wareham might have believed that she was consciously ripping them, there is ample support in the record for her explanation. [Turner Dep. 50–51]. Without any underwear, she felt uncomfortable sitting on the mat. So she sat on her knees, which put pressure on the gown. That, along with the wetness from her tears, meant that the paper gown was prone to rip and tear. And when the gown(s) tore, she was left feeling exposed to anyone who looked in through the cell window.

The Court rejects Officer Wareham's suggestion that either a torn gown or the mat on the floor could be used as suitable alternate covering. To require a detainee to cover herself with paper scraps is hardly sufficient. And, even assuming the mat (or blanket) could cover her, requiring a detainee to hide naked under it for more than a short period of time would probably not suffice either. Simply put, Ms. Turner was entitled to a full gown. Thus, if Officer Wareham had outright refused to continue to clothe her after her gown tore, and instead had required her to remain exposed while members of the opposite sex looked on, that very well might suffice to show a violation under <u>Fortner</u> and <u>Boxer X</u>.

Ultimately, however—notwithstanding Ms. Turner's argument to the contrary—the record shows that is not what happened here. And so, for the reasons

outlined below, the Court finds that Officer Wareham did not violate Ms. Turner's right against the compelled exposure of the private parts of her body.

First, Officer Wareham's role throughout was more limited than Ms. Turner suggests. It is undisputed that he did not originally remove Ms. Turner's clothes—two female officers did that—and the record shows that he was not on duty when a group of male prisoners allegedly walked by her cell and were able to look in on her.[3] While he was on duty, he himself was the only onlooker. And though of course there need not be additional witnesses to violate the right under <u>Fortner</u> and <u>Boxer X</u>, still, here, the record does not reveal that he saw her exposed. He testified that, while he checked on her every fifteen minutes as the policy required him to do, he never saw any of her private parts revealed. [Wareham Dep. 40]. That distinguishes this case from <u>Mitchell</u>, where numerous onlookers testified to seeing the plaintiff's private parts. 608 F. App'x 732–33.

Moreover, even if the Court were to conclude that a fact issue remained as to whether Ms. Turner was exposed to Officer Wareham, there is not enough

---

[3] There is some disagreement about whether Officer Wareham was present when she returned from her initial appearance. Ms. Turner says that he told Officer Moise that Ms. Turner needed to change back from her clothes into a gown after the hearing. [Turner Dep. 57–58]. Officers Moise and Wareham disagree, and Officer Moise notes that it was the policy that she would have to change anyway. [Moise Dep. 10–11]. So, the Court does not view this as a material dispute.

evidence to suggest that it was Officer Wareham who "compelled" that exposure. No one argues that he tore the gowns himself, as did the officers in Brand v. Casal, 877 F.3d 1253, 1259 (11th Cir. 2017), vacated (May 1, 2018). Further, although Ms. Turner avers that he "did nothing" when the torn gown left her exposed [Turner Aff. at ¶ 7], that is not supported by the evidence. Notably, Ms. Turner admitted that he provided her at least one replacement. [Turner Dep. 42]. He testified that it was more than that, though he could not recall the number. [Wareham Dep. 5]. And other testimony supports his position: Officer Moise—who replaced Officer Wareham on duty—testified that there were additional gowns crumpled in the corner when she cleaned Ms. Turner's cell. [Moise Dep. 7].

It is true that Officer Wareham testified that he chose not to replace her gown on one occasion, but that was because his shift was ending, and Officer Moise, a female, was set to take over. [Wareham Dep. 32]. (Indeed, when she took over, she allowed Ms. Turner to take a shower.) Under the circumstances—including the fact that no one else besides the two of them would be able to see Ms. Turner—that was a reasonable decision for Officer Wareham to make.[4]

---

[4] The Court is a little troubled by Officer Wareham's suggestion in the deposition that he might not continue to give additional gowns if he believed a detainee continued to intentionally destroy them. But that was a hypothetical remark; he made clear that he never reached that point with Ms. Turner. [Wareham Dep. 33].

8

Finally, it is important to note that, in measuring his conduct, Officer Wareham had to balance Ms. Turner's interest in her bodily privacy with her interest in being protected from self-harm. At this stage, it is taken as true that Ms. Turner was appropriately placed on suicide watch after making suicidal remarks. And it is beyond dispute that protecting detainees from suicide is an important government function; indeed, the *failure* to protect suicidal prisoners from themselves can subject officials to liability under certain circumstances. See Jacoby v. Baldwin Cty., 596 F. App'x 757, 765 (11th Cir. 2014) (citing Greason v. Kemp, 891 F.2d 829, 835–36 (11th Cir. 1990)) ("[F]ailure to take steps to prevent [an] inmate from committing suicide can amount to deliberate indifference."). Balancing that important interest separates this case from the others that have identified a violation of the right to privacy. Cf. Fortner, 983 F.2d at 1030 (when determining whether injunctive relief is warranted, court must determine whether policy which infringes the right to privacy is "reasonably related to legitimate penological interests").

The Court sympathizes with Ms. Turner. Her night in jail was distressing, and it serves as a reminder that even brief periods of incarceration can take a serious toll on a person. But, given the strong countervailing interests of protecting her from harming herself, and given the clear evidence that Officer Wareham did

not tear the gowns and in fact replaced them when they tore, the Court holds that he did not violate Ms. Turner's constitutional right to bodily privacy by compelling the exposure of her private parts.

## CONCLUSION

For the foregoing reasons, Defendant Officer Wareham's Motion for Summary Judgment [Dkt. 68] is **GRANTED**. Plaintiff Michelle Turner's claim is hereby **DISMISSED**. Because no claims remain, the Clerk is **DIRECTED** to **TERMINATE** this case.

**SO ORDERED** this 7th day of April, 2021.

_____
**RICHARD W. STORY**
United States District Judge